# CASES

### ARGUED AND DETERMINED

###### IN THE

## SUPERIOR COURT OF JUDICATURE.

###### FOR

## THE COUNTY OF GRAFTON, NOVEMBER TERM,

## A. D. 1829.

### GRAFTON BANK *versus* JOSHUA WOODWARD.

When a note is signed by a surety, if the creditor, after the note is due, for a valuable consideration contracts to give day of payment to the principal without the consent of the surety, the latter is discharged.

A written contract, not under seal, may be varied by a subsequent parol agreement, and if by such agreement the time of payment be prolonged, no action lies upon the original contract till the expiration of the prolonged time of payment

ASSUMPSIT upon a note dated July 23, 1823, made by the defendant, and payable to the bank, on demand, with interest after sixty days.

The defendant pleaded in bar, that he signed the note as a surety only, for one Aaron Hale, who also signed the same ; and that this was known to the bank at the time the note was discounted ; that by the rules of the bank every note discounted there is required to be paid by instalments of one fifth part of the whole sum every sixty days, with interest upon the sum remaining due for sixty days in advance ; and in case of any failure thus to pay, the whole amount of the note is, by the same rules, to be immediately collected ; that on the 28th January, 1824, there were due and unpaid on said note two instalments, as aforesaid, and the bank ought, accord-

ing to said rules, to have collected immediately, the whole amount of said note in due course of law; yet the plaintiffs, on the said 28th January, agreed with the said Hale to forbear to collect said note, and to give him day of payment of the same for the term of sixty days, in consideration that the said Hale undertook, for such forbearance, to pay the interest then due, and also interest for sixty days in advance, and to continue to pay the interest in advance, and also once in every sixty days, reckoning from the time of the first omission to pay the instalments as aforesaid, and for so long time as the plaintiffs should permit said note to remain unpaid, as aforesaid, to deliver to the plaintiffs bills of some bank in Boston equal in amount to the sum which might then be due on said note, and to receive in exchange for such Boston bills the bills of said Grafton bank, or other current bills ; and in case said Hale should fail to exchange bills as aforesaid, then said Hale to pay, in addition to the legal interest, a further sum equal to the legal interest ; that in pursuance of this agreement, the said Hale paid to the plaintiffs on the said 28th January, the interest then due on said note, and also the interest upon the same for sixty days, in advance, and also a further sum equal to the interest as aforesaid ; that in pursuance of said agreement, the plaintiffs forebore to collect the contents of said note until the 1st July, 1824, when said Hale had failed, and that the defendant had no knowlege of said agreement until said Hale had failed.

To this plea there was a general demurrer and joinder in demurrer.

*Joseph Bell*, for the plaintiffs, in support of the demurrer, relied upon the following points and authorities :

1st, The contract declared on is admitted in the plea to be a joint and several contract made by the defendant and others with the plaintiffs, and the discharge of a surety by the mere extension of time by the creditor without payment or any other act by the surety is bor-

rowed from the court of chancery, and has in no case been applied to the discharge of the promise of a surety in a joint and several promissory note in a court of law. *Orme* v. *Young*, 1 Holt, 84 ; 3 N. H. Rep. 231, *Davis* v. *Higgins.*

2d, The doctrine in the court of chancery is based on the right which the surety has in that court to demand to sue his principal in the name of the creditor. 1 Holt, 84, *Orme* v. *Young.* But there is no such right in this state, and consequently no such discharge. The surety's remedy here is, to pay the debt, and then call upon the principal in his own name.

3d, But if such a doctrine exist in this state it can only be, where the creditor makes a valid and binding contract on good consideration to extend the time of payment for a definite time, and a loss happens by the failure of the principal within that time, so that the extension may become injurious to the surety. 1 Holt, 84, *Orme* v. *Young* ; 1 B. & P. 419—422, *Pal, et a.* v. *Tatlock.* But the contract stated in these pleas is either without consideration, or on an illegal one, and no loss or injury is stated to have happened within the extended time.

4th, The plea of the defendant admits the contract to be as stated in the declaration to pay $500, on demand, and yet sets forth as a defence that the same contract, is a contract to pay the same sum in five equal instalments at the termination of sixty days from each other.

*Woodbury*, *J. Rogers*, *Wilcox*, and *J. Parker*, for the defendant.

It is strongly intimated in 2 N. H. Rep. 448, *Townsend* v. *Riddle* ; and 3 N. H. Rep. 231, *Davis* v. *Higgins*, that if a creditor, without the assent of the surety, by a new and distinct engagement, give day of payment to the principal, the surety is thereby discharged. The authorities both at law and in equity concur, and are uniform in establishing this principle. 2 Pick. 223, *Boston Hat Manufactory* v. *Messinger* ; 1 Holt's N. P. R. 84, *Orme* v.

*Young* ; 6 Taunt. 382, *Moore* v. *Bowmaker* ; 3 B. & P. 366, *Clark* v. *Devlin* ; 2 Camp. N. P. R. 185, *Laxton* v. *Peat* ; 2 Vesey, jr. 540, *Rees* v. *Berrington* ; 18 Vesey, 20, *Boult-bee* v. *Stubbs* ; 3 Merivale, 272, *Samuel* v. *Howarth* ; 2 Johns. Ch. Rep. 554, *King* v. *Baldwin* ; 10 Johns. Rep. 587, *Rathbone* v. *Warren* ; 7 Johns. Rep. 332, *People* v. *Jansen.*

The principle is recognized also in 2 Caine's Cases in Error, 49, 57, *Ludlow* v. *Simonds* ; 15 Johns. 433, *Fulton* v. *Matthews* ; 17 Johns. 384, *King* v. *Baldwin*, in Error ; 3 Binn. 523, *Commissioners of Berks* v. *Ross* ; 6 Binn. 295, *Commonwealth* v. *Wolbert* ; 15 East, 617, *Thomas* v. *Young* ; 4 Taunt. 456, *Bowsfield* v. *Tower* ; 5 Taunt. 319, *Croft* v. *Johnson.*

The giving further time in this case, under the agreement specified, without receiving the instalments, and after the omissions to pay by reason of which it became the duty of the plaintiffs to collect the whole immediately, was contrary to the stipulations under which the contract was made, and was emphatically a new and distinct engagement for delay.

A surety is in no case to be charged "beyond the scope of his engagement, as understood at the time he entered into the contract." 2 Pick. 234 ; 2 Caines' Cas. 29, 34, 57 ; 2 Saund. 411, *Lord Arlington* v. *Merricke* ; 6 East, 511, *Liverpool Water Works Co.* v. *Atkinson* ; 2 B. & P. N. R., 175, *Wardens of St. Saviours* v. *Bostock* ; 2 W. Black. 934, *Wright* v. *Russell* ; 3 Wilson, 530, S. C.; 7 D. & E. 254, *Myers* v. *Edge* ; 3 East, 484, *Strange* v. *Lee* ; 1 D. & E. 287, *Barker* v. *Parker* ; 1 B. & P. N. R., 34, *Dance* v. *Girdler* ; 10 Johns. 180, *Walsh* v. *Bailie* ; 4 Johns. Rep. 476, *Robbins* v. *Bingham* ; 1 Pick. 192, *Hill* v. *Hunnewell* ; 17 Mass. 603, *Bean* v. *Parker* ; 1 Pick. 204, *Willis* v. *Crooker.*

Whether the contract is joint and several, or joint, makes no difference in the application of the principle. *Grafton Bank* v. *Kent* ; *Bellows* v. *Lovell*, 5 Pick. Rep. 307 ; *Fulton* v. *Matthews*, 15 Johns. 433 ; *Pain* v. *Packard*, 13 Johns. 174.

The doctrine respecting the discharge of the surety may be said to be based on the presumption that the principal would have performed his contract, and thereby exonerated the surety, had not further time been given and the creditor disabled himself to enforce it ; and it has been fully adopted in the courts of law, on its own merits. *Grafton Bank* v. *Kent* ; 5 Pick. 310.; 4 Taunt. 456. " There is nothing in the nature of the defence, to make it peculiarly a subject of equity jurisdiction." 7 Johns. Rep. 337.

The contract for the extension in this case, as between the parties to it, was sufficient ; and the plaintiffs cannot take advantage of having themselves exacted usury, and escape by alleging that the contract they made was illegal. It was not void, although the plaintiffs might thereby have subjected themselves to a loss of treble the usury taken ; and, moreover, it has been executed.

The plea alleges the insolvency of the principal, within the time which the plaintiffs forebore in pursuance of the contract. This, however, was not necessary, for the surety was discharged on the making of the agreement. 3 Merivale, 272—279 ; 2 Vesey, jr, 543 ; 18 Vesey, 21 ; 10 Johns. 595 ; 2 Caine's Cases, 58—65.

The plea does not attempt to contradict or vary the terms of the written contract, but sets forth a usage of the bank to receive payment by instalments. This is consistent with the contract, and the plaintiffs suffer no injury by it, for without such usage, every renewal would discharge the surety.

It is also consistent with the original contract to allege that there was a *subsequent* agreement to extend the time for performance ; and that agreement was binding upon the plaintiffs, and would have prevented them from collecting the note of the principal during the extension of the credit. 1 Johns. Cases, 22, *Keating* v. *Price* ; 12 Mass. Rep. 484, *Ward* v. *Winship* ; 3 Camp. 57, *Hoare* v. *Graham* ; 1 Cowen, 250, *Erwin* v. *Saunders* ; 2 Johns. Ch. Rep. 559 ; 17 Vesey, 356 ; 18 ditto, 20 ; 1 M. & S. 21,

*Cuff* v. *Penn* ; 3 Starkie's Ev. 1050 ; 1 Phillip's Ev. 442 ; *Warren* v. *Stagg*, cited 3 D. & E. 591 ; 1 Espin. N. P. Rep. 35, *Ratcliff* v. *Pemberton* ; ditto, 53, *Thresh* v. *Rake.*

The opinion of the court was delivered by

RICHARDSON, C. J. The plea, in this case, contains some redundant matter. Whatever rules and regulations the bank may have adopted in relation to the collection of the notes it received, those rules and regulations must have been made for its own convenience, without any intent to control the express provisions of any contract, to which it might be a party, and might be enforced, or not, at its pleasure, without varying the liability of the principal, or sureties, in this case. All the allegations in the plea, relating to such rules and regulations may then be considered as mere surplusage.

The note is alleged to be payable on demand, with interest after sixty days. It seems to be generally understood, that the principal in such a note is payable on demand, and that the words, " after sixty days," refer only to the interest. 5 Pick. 15, *Loring* v. *Gurney.*

But however this may be, it is clear, that the note was, upon any construction which can be put upon its terms, payable at the time the contract, upon which the defendant relies, for his discharge, was made with the principal.

It is averred, that the defendant is a surety merely, and that this was known to the plaintiffs.

It is then, in substance alleged, that on the 28th January, 1824, the plaintiffs, for a valuable consideration, agreed with the principal without the knowledge, or consent of the defendant, to forbear to collect the note, and to give to the principal further day of payment for the term of sixty days. This agreement must be understood from the terms, in which it is averred to have been absolute and unconditional. We have been at a loss to conjecture the motive, which could have induced the bank to make such a contract. The note was originally

payable on demand, although probably interest was paid for sixty days in advance, with an understanding between the parties that the money was not to be demanded within that time, unless the safety of the debt, or the situation of the affairs of the bank should make a demand necessary. And the interest might have been paid in advance at any subsequent period, on the same terms, and with a like understanding, without doing any wrong to the surety, and without discharging him from his liability upon the note. But the plea alleges an absolute and unconditional agreement to give day of payment for the term of sixty days, and this allegation is admitted by the demurrer.

We consider it as now settled by a long series of decisions on grounds the most satisfactory, that if a creditor, knowing there is a surety, gives time to the principal debtor, under an express and absolute agreement for that purpose, made for a valuable consideration, without the consent of the surety, in so doing he discharges the surety, and that this is a good defence for a surety in a court of law.

It has been suggested in the argument, that this rule of law is founded on the right which a surety has in a court of equity to demand to sue the principal in the name of the creditor, and that as we have no such court, no such right can exist, and the rule can have no just foundation in this state. But that is a mistake. For even where there are courts of equity, the surety has a right to pay the debt when due, and sue the principal in his own name ; and there is as good a reason why the surety should be discharged, if deprived of this right by a contract between the principal and the creditor, as if he were deprived of the right to sue in the name of the creditor.

In this state the surety has a right to pay the debt when due, and then call upon the principal. If the creditor by a valid contract gives the principal day of payment without the assent of the surety, the law does not permit

14

the surety to interfere, but he is discharged, and in this way the rights of all concerned are secured.

It has been further urged, that the rule, by which a surety is discharged when a new contract for delay is made between the creditor and the principal without the consent of the surety, does not apply, where the surety is jointly and severally bound. But the cases to which we have been referred, do not support this distinction; nor do we see any thing in the nature of such a contract, which can render this circumstance at all material.

It is also said, that the surety is not discharged unless the principal becomes insolvent within the time of the extended credit. But we find no case which sanctions this limitation of the rule. On the contrary, it seems always to have been understood, that the new agreement, *ipso facto*, exonerated the surety.

Another objection, which has been made to the plea in this case, is, that the consideration on which the agreement by the bank to extend the credit is alleged to have been made was illegal. This objection is well founded in fact. The consideration paid for the forbearance is averred to have been interest at the rate of twelve per cent per annum. This was illegal. But it is well settled, that in this state a promise founded upon an usurious consideration is not void. He who takes or secures more than six per cent for giving day of payment, is made liable to certain forfeitures which, in a suit upon the contract, may be deducted from the debt, and a promise to pay more than six per cent is held to be invalid as to all above six per cent. And where illegal interest has been paid, it may be recovered back in an action for money had and received. 2 N. H. Rep. 333, *Willie* v. *Green* ; Ibid, 410, *Young* v. *Berkley.* To this extent, and no farther, is a contract affected by usury in this state. A promise to give day of payment founded upon a usurious consideration is certainly not void.

It only remains to enquire, whether the contract between the principal in this case, and the bank, that further day of payment should be given, was such that no suit could have been maintained upon the note by the bank until the further day of payment arrived ?

The contract to give time is not averred to have been in writing, and we have no doubt that it must be considered in this plea as a contract not in writing. T. Ray. 450, *Case* v. *Barber* ; T. Jones, 158, S. C. ; 1 Saund. 276, *a*, note 2 ; Buller's N. P. 279.

But there is no statute, that requires such a contract to be in writing ; and a contract not in writing has the same validity as the same contract would have, if reduced to writing.

All agreements in writing, not under seal, are considered as parol agreements. Philip's Ev. 444.

Where a contract is in an instrument under seal, it seems to be settled in England, that it cannot be varied by a subsequent parol contract. 5 B. & A. 187 *Davey* v. *Prendergrass* ; 3 D. & E. *Littler* v. *Holland* ; 1 East, 619.

But it has been decided in New-York, that the time of the performance of the condition of a bond may be enlarged by a parol agreement of the parties. 3 Johns. Rep. 528, *Fleming* v. *Gilbert*.

With respect to written contracts, not under seal, the law seems to be well settled, that their terms may be varied by a subsequent parol contract.

Thus Starkie says, " if an agreement be reduced to writing, parol evidence is admissible to show, that the parties without writing afterwards varied the terms." 4 Starkie, 1048.

Chitty says, " a subsequent parol agreement not contradicting the terms of the original contract, but merely in continuance thereof, and in dispensation of the performance of its terms as in prolongation of the time of execution is good, even in the case of a contract reduced to writing, under the statute of frauds." Chitty on Contracts, 27.

There are many cases in the books which recognize the same principle. 5 B. & A. 187 ; ante, 45, *Robinson* v. *Batchelder.* 1 Johns. Cases, 22, *Keating* v. *Price.* And it is believed, that no case can be found in which it has ever been questioned.

It seems to be well settled, both in courts of law and in courts of equity, that an executory agreement in writing, not under seal, may, before breach, be discharged by a subsequent unwritten agreement. Philips' Ev. 444–448 ; Com. Dig. "action on the case in Assumpsit," G. ; 1 Camp. 35, *Whatley* v. *Tricker* ; Chitty on Bills, 157 ; 9 Vesey, 250 ; 17 ditto, 364 ; 1 ditto, 402 ; 1 Johns. C. R. 429—430 ; 2 ditto, 416, Chitty on Contracts, 292.

If a written contract can be discharged altogether by a subsequent agreement, not in writing, it will be difficult to conceive, it is imagined, any good reason why its terms may not be altered by such an agreement. If the contract can be varied, no action can be sustained on the original contract in contravention of the new agreement.

We are, on the whole, of opinion, that the plea is in law a sufficient answer to the declaration.