## CROSBY *vs.* WYATT.

As a general rule, the reception of interest in advance, upon a note, is *prima facie* evidence of a binding contract to delay the time of payment; and no suit can be commenced against the maker during the period for which the interest has thus been paid.

Where, however, a note is, by its terms, made payable on demand, and interest in advance for a certain period is paid at the time of making it, but not indorsed, oral evidence of a contract for delay, made at the time, cannot be received, as it would contradict the written contract.

Interest may be received in advance, with a reservation, by agreement, of a right to sue within the time.

If a surety assent to an agreement for delay, he will still continue liable on the note.

If a note is made payable to a bank, where a regular usage exists to receive payment by instalments, at regular intervals, with the interest on the balance in advance, there is presumptive evidence of the assent of a surety that payment may be delayed, and received by instalments, according to such usage, until the contrary is shown. But this principle cannot be held to apply to any delay beyond such regular usage; and no assent to any other course can be presumed.

If there is any other custom of a bank, to let notes lie, on the payment of interest in advance, there must be other evidence to show the knowledge and assent of the surety, in order to continue his liability; but such assent may be shown by circumstantial evidence.

The assent of one surety, to a contract for delay, will not bind a co-surety; and one surety may be discharged by such contract, while the other continues liable.

ASSUMPSIT, for money paid, &c. The writ was dated July 17, 1837.

Plea, the general issue, with a brief statement, that the defendant would rely upon the statute of limitations.

It appeared in evidence, that one Jesse Varney and the plaintiff were formerly copartners in business, and that, July 25, 1816, they, as principals, with J. Mann and P. Chandler as sureties, gave a promissory note to the Strafford bank, for $1000 in sixty days—that, May 25, 1821, a note was given to the bank by Varney as principal, and the plaintiff and Chandler as sureties, for the sum of $600, being the balance due on that note—and that March 28, 1825, Varney as prin-

cipal, and the plaintiff and defendant as sureties, executed a joint and several note to the bank, for the same sum, in sixty days, with interest after, which was substituted for the other. On this last note Varney paid interest for sixty days in advance, at three different times in 1825, and twice in 1826, which was indorsed on the note. He was in Dover, in the open possession of personal property sufficient to secure a much larger debt, until April, 1828, when he failed.

The plaintiff Crosby was a director of the bank from 1804 to 1821, with the exception of one year ; and president of it from 1819 to 1821, when he removed from Dover to the state of Maine.

It appeared from the evidence of the cashier, that during this time, and until after Varney's failure, it was the custom of the bank to discount accommodation notes, payable to the bank in sixty days, and when the notes became due to receive checks and interest, and in many cases merely the interest, for the next sixty days, and to indorse the same on said notes ; and to continue to indorse every sixty days, or whenever payments were made ; and this has been done without any new vote of the directors, until the notes were required to be taken up. It has frequently been the case that notes have remained for several years, and nothing but interest paid upon them. They customarily remained until a change of names was required, or until the payment of checks, of about ten per cent. reduced the amount to $100, and then payment was required to be made. And the cashier testified that it was understood by the bank, that a note was to lie during the time for which interest was paid in advance ; but either principal or sureties had liberty to take up the note in the mean time, if they chose to do so.

The plaintiff was well acquainted with the aforesaid custom, and acquiesced in it.

The defendant has been in the habit of doing business at the bank, and has had as great, and the same kind of delay and indulgence on his own notes, as was given upon

that of Varney; but it did not appear that he had any knowledge respecting the latter, from the time it became due until the commencement of this suit.

The bank commenced a suit against the plaintiff, upon the note, in the state of Maine, February 3, 1830; and, upon a case stated, recovered judgment, April term, 1832, which was paid and satisfied by the plaintiff, May 28, 1833; and this suit was brought to recover a contribution of the defendant.

A verdict was taken for the defendant, by consent, subject to the opinion of this court.

*Christie*, for the plaintiff, cited 3 *N. H. Rep.* 270, *Odlin* vs. *Greenleaf*; 2 *Pick. R.* 581, *Hunt* vs. *Bridgham*; 17 *Johns. R.* 176, *Powell* vs. *Waters*; 8 *Pick. R.* 458, *Oxford Bank* vs. *Lewis*; 8 *Greenl. R.* 191, *Strafford Bank* vs. *Crosby*; 3 *Mason's R.* 455, *Locke* vs. *United States*; 10 *Pick. R.* 129, *Blackstone Bank* vs. *Hill*; 1 *Shepley's R.* 202, *Freeman's Bank* vs. *Rollins*; 9 *Mass. R.* 155, *Lincoln & Kennebeck Bank* vs. *Page*; 5 *Pick. R.* 16, *Loring* vs. *Gurney*; 9 *Wheat. R.* 581, *Renner* vs. *Bank of Columbia*; 11 *Wheat.* 438, *Mills* vs. *Bank of United States.*

*Bartlett*, for the defendant.

PARKER, C. J. The note of Varney, upon which these parties were sureties, was given to the Strafford Bank in March, 1825. The writ in favor of the bank, against the plaintiff, was issued in February, 1830. The plaintiff, therefore, could not avail himself of a plea of the statute of limitations, in that action, less than six years having elapsed from the time when the note was given; nor could the defendant, if a suit had then been instituted against him by the bank, have set up a defence of that character. In May, 1833, when the plaintiff paid the money, more than six years having elapsed from the date, without any recognition of the

Crosby *v.* Wyatt.

debt on the part of the defendant, if a suit had been commenced against him upon the note itself, he might have availed himself of the statute to defeat a recovery. But this by no means proves that he can make the same defence in this suit, which is for a different cause of action. It may be said that it has its origin in the note; but it is founded upon a different promise. When the parties signed the note as sureties of Varney, there was an implied promise from each to the other, to contribute one half of what either should lawfully pay upon it; and when the plaintiff, in 1833, paid the money, under a judgment of the supreme court in Maine, duly rendered, the cause of action arose upon which this action is founded. It does not appear that the plaintiff could in any way have avoided that judgment. The payment was compulsory on his part. Had he paid voluntarily, at the time when the suit was commenced, and brought his action within six years of that time, being then liable, the statute would not have affected his remedy, on the defendant's implied promise. And the plaintiff's liability being continued by the suit and judgment against him, his payment, in 1833, is equally within the terms of the defendant's liability to him, giving him, then, for the first time, a cause of action, against which the statute had interposed no bar at the date of the commencement of this suit, in 1837. 3 *N. H. Rep.* 270, *Odlin* vs. *Greenleaf.*

But the case presents a further question, which is, whether the defendant, being a surety, was discharged from his liability on the note, by a contract or contracts for delay, between the bank and Varney, the principal, without his assent, prior to the institution of the suit against the plaintiff. If he was so discharged, he may have a good defence to this action, notwithstanding the plaintiff, another surety, may have continued liable, by reason of having given his assent to the delay.

It has been decided in Massachusetts, (8 *Pick. R.* 458, *Oxford Bank* vs. *Lewis*) that notwithstanding the receipt of

interest in advance, upon a note held by a bank, without the knowledge of the sureties, the bank might still sue the note, within the time for which the interest has been paid, and that such a transaction did not operate to discharge the sureties. A similar decision was made, under a state of facts somewhat different, 10 *Pick. R.* 129, *Blackstone Bank* vs. *Hill.*

These decisions have been recognized, and the same principle settled in Maine. 1 *Shepley's R.* 202, *Freeman's Bank* vs. *Rollins.* The reason given for the decision, in the latter case, seems to have been, mainly, that it was very desirable that in relation to bills of exchange, and notes of hand, there should be preserved in the commercial world, as near as might be, an uniformity in the law.

Thus far the principle has been applied to banks only ; and whether it is intended to extend the rule to individuals, or whether this is to be an exception, does not appear.

We are fully impressed with the importance of such uniformity ; and a very high respect for the learned tribunals whose decisions have been referred to, has induced us to pause, and endeavor to concur in those decisions. But our own reasonings have not led us to the same result. Where an individual pays interest upon a note in advance, he does so for the purpose of procuring delay ; and it is believed that it is generally understood between the parties, unless there is some express reservation, that the creditor has no right to call for the principal, until the expiration of the time. Such was the opinion of the jury, upon a payment of interest, in the case last cited, (1 *Shepley* 203) and such seems to have been the understanding of the cashier, in this case. The payment of the interest is the consideration of such an agreement, implied from the transaction itself, if not distinctly expressed. The sum received is a payment, not of a part of the principal, or generally, but, specially, of interest, for a certain period. And why is this payment made ? Clearly to obtain the delay, and for nothing else. The very

idea of a payment of interest in advance pre-supposes that delay of payment of the principal is to be given for the time. The interest thus paid is not expected to be applied afterwards to the principal, or paid back on any contingency, unless there is some agreement of the parties to that effect. Nor are we aware of any principle upon which the maker, after such a payment of interest in advance, could, before the expiration of the time, on offering to pay the balance, require the creditor to apply any portion of the interest so paid, in discharge of the principal. Should the creditor, within the time, commence a suit, and obtain a judgment, no defence being made, the maker might perhaps recover back the interest for the unexpired time ; but that would be because the creditor had not performed what was incumbent on him, and the consideration of the payment had failed to that extent. 7 *N. H. Rep.* 535, *Fuller* vs. *Little.* A payment of interest in advance furnishes a sufficient consideration for a contract to delay. 6 *N. H. Rep.* 504, 508, *Wheat* vs. *Kendall ; ante* 164, *Bailey* vs. *Adams.*

As a general rule, then, the reception of interest in advance, upon a note, is *prima facie* evidence of a binding contract to forbear and delay the time of payment ; and no suit can be commenced against the maker during the period for which the interest has thus been paid. This rule is applicable to banks as well as to individuals.

Where the note is, by its terms, made payable on demand, and the interest in advance, for a certain period, is received at the time of making it, but not indorsed, this rule may not apply, or rather, another rule may be interposed. The maker, in such case, cannot be permitted to introduce parol evidence of an agreement for delay, made at the same time, in avoidance of an action commenced within the period for which the interest has been received ; for that would be to contradict the written contract. 10 *Barn. & Cres.* 729, *Mosely* vs. *Robinson.* If there was no admissible testimony to show the contract, the creditor, relying on the stipulation

Crosby *v.* Wyatt.

in the note, might maintain a suit, within the time for which the interest had been paid in advance, and of course the surety might pay within that time, and take his remedy against the principal. But any agreement, entered into subsequent to the making of the note, would not be liable to that objection. It might be proved, and would be binding. 5 *N. H. Rep.* 99, *Grafton Bank* vs. *Woodward.*

The general rule, of course, does not apply where, on the payment of interest in advance, liberty to sue is reserved. The payment of the interest in advance is not of itself a contract to delay, but is evidence of such a contract. The evidence derived from it may be rebutted; but, unless rebutted, such evidence is conclusive.

It is well settled that if a binding agreement is made between the creditor and the principal, for an extension of the time of payment, without the assent of the surety, the latter is discharged. But if the surety assent to the agreement, he will still be bound. This assent may be proved, like other facts, by circumstantial evidence. And a regular usage of a bank, to receive payment by instalments, or checks, at sixty or ninety days, or whatever length of time such regular rule prescribes, with interest on the balance in advance, furnishes presumptive evidence of the assent of those who become parties to notes payable to the bank, that the payment may be delayed and received in instalments, according to such usage, until the contrary is shown. The usage of banks, to receive payment in this way, varying, however, as to time, has been too often proved, and is too universal, to escape the knowledge of those generally who deal with them; and sureties on notes to them must be understood to assent to such usage, if it be shown to be the regular usage. 9 *Wheaton's R.* 588, *Renner* vs. *Bank of Columbia;* 11 *Wheaton's R.* 438, *Mills* vs. *Bank of U. States;* 9 *Pick. R.* 16, *Loring* vs. *Gurney;* 8 *Greenl. R.* 193, *Strafford Bank* vs. *Crosby.*

This principle, however, cannot be held to apply to any

delay, beyond a regular usage to receive payment of portions of the debt by instalments, at regular intervals, and the interest in advance on the residue ; and no assent to any other course than this can be presumed. If there is a usage of any bank beyond this, in order to hold a surety liable there must be further evidence to show knowledge and assent. This, however, may be shown by circumstantial evidence, as before suggested ; and evidence, such as was adduced in the suit against the plaintiff, in Maine, and appears in this case, that there was a usage in the Strafford bank to suffer notes to remain over due, the interest being paid in advance, and that the plaintiff was a director of the bank, and acquiescing in it in relation to the notes of others, would furnish good evidence to show his assent to a similar practice, on a note in the bank on which he was surety. He must, under such circumstances, be considered as assenting, until his dissent is expressed. The plaintiff, therefore, was well held liable, in that case, upon the principles we have stated. 8 *Greenl. R.* 191.

But the assent of one surety, to a contract for delay, will not be evidence of the assent of another surety, and bind him. Wyatt would be discharged by the reception of interest in advance, beyond the regular time for the payment of instalments, unless he also assented ; and, if so discharged, will not be liable to contribution. In this part the case is not like that of two joint promissors on a note, a remedy on which is barred by the statute of limitations, as to one, while the liability of the other has been at all times continued by payments or new promises. In a case of that character, an implied promise arises upon the giving of the note, that each will contribute to the other one half of what that other is obliged to pay ; and when one, who has continued liable at all times, pays the note, as he is obliged to do, he may recover a moiety of what he has paid. But there, the one against whom the creditor could not proceed, might have paid and taken up the note, and

Crosby v. Wyatt.

brought his action for contribution, before the statute barred it ; and if he neglected to do this, he may not complain of the delay of the other in discharging the contract, or contend that he is discharged on his implied promise, because he is on the express promise to the creditor.

But in the case of a surety, if the creditor, without the assent of the surety, makes a binding agreement with the principal for delay, the surety cannot pay and take his remedy on the principal, and is for that reason held discharged. And if there are two sureties, and one assents, while the other does not, the agreement will have a similar operation. The same reason exists why the one who does not assent should be discharged, notwithstanding the other remains liable. The surety who alone assents agrees, in effect, that he will stand as surety for the whole, and that his co-surety shall be released.

Whether this action can be sustained against Wyatt, then, depends upon the question, whether he also assented to the delay. As the delay was not in a regular course of renewal, on the payment of instalments, his assent is not to be presumed, but must be shown, either by proof of an express assent, or by circumstances such as shall satisfy a jury that he probably had knowledge that such delay would be, and was, given, and intended to make no objection to it, or avail himself of it.

The judgment, in Maine, is not sufficient to conclude the defendant upon this question. Accompanied by the other evidence in the case, it proves that the plaintiff has been obliged to pay the money, but it does not show that the defendant was assenting to the delay, so that he is bound to contribute.

But the case shows the existence of evidence tending to prove the assent of the defendant, and proper to be submitted to a jury for that purpose ; and for this reason the verdict is set aside, and the case transferred to the common pleas, for a

*New trial.*