## NEW-HAMPSHIRE SAVINGS BANK *vs.* ELA.

Where a debtor made an assignment of his property to trustees, to be sold and the avails applied to the payment of his debts, the creditors who executed the assignment agreeing to release such portions of their debts as the goods assigned should be sufficient to pay ; and in the schedule, annexed to the

New-Hampshire Savings Bank *v.* Ela.

assignment, sums were set against the different articles, as the value of the property—*Held*, that the mere fact that those sums were entered in the schedule, was not even *prima facie* evidence of the actual value of the property.

Where the by-laws of a savings bank required ten per cent. of the principal to be paid on all notes every four months, with the interest in advance, and the treasurer of the bank received the interest on a note belonging to the bank, *from time to time, for four months in advance, according to a regular usage at the time*—*Held*, that this was *prima facie* evidence of contracts by the bank to delay the payment for that time, and that the bank could not avoid the effect of this evidence, by alleging that the officers of the bank had no authority to make a contract for delay.

The defendant was surety upon a note, which was discounted by a savings bank, and *on which interest was paid at divers times in advance, by the* principal, without his assent, after which he was elected a trustee of the bank, and acted as such. The note remained in the bank, and interest was paid in advance upon it as before ; but it did not appear by any express evidence that the defendant had knowledge of this, nor that he in any way recognized the note as an existing debt against him—*Held*, that he was not precluded from insisting upon the payments of the interest in advance, prior to the time when he became a trustee, as *prima facie* evidence of a contract for delay, which discharged his liability.

The note was one of the preferred debts, entered in the schedules annexed to the assignment before mentioned, which was made by the principal debtor. The defendant had a claim against the principal, and along with others executed the assignment ; there being no particular evidence to show that he signed it on account of the debt to the plaintiffs, on which he was surety, and on which the interest had been paid as aforesaid—*Held*, that he must be presumed to have executed it on account of the debt due to himself, and that his execution of it was not evidence that he admitted himself to be liable on the debt upon which he was surety.

ASSUMPSIT upon a promissory note, signed by the defendant, March 29, 1833, for $369, payable to R. T. Crane & Co. or order, in six months, with interest after, and indorsed to the plaintiffs.

It was admitted that Moses G. Atwood, one of the signers, was the principal debtor, and the defendant a surety, and that this was known to the agents of the plaintiffs when they took the note.

The defendant gave in evidence an indenture, dated October 13, 1834, made between said Atwood of the first part, A. Cady and H. Hutchins of the second part, and the Concord Bank and others of the third part, reciting that Atwood

was indebted to sundry persons—that he was possessed of certain property—that it was agreed that the same should be assigned and conveyed to Cady and Hutchins, in trust for the payment and discharge of the claims and liabilities of the parties of the second and third parts, as far as the same should go—and that they should release and quitclaim to Atwood such parts and portions of their respective demands, as the goods, wares and merchandize therein assigned should be sufficient to pay, as afterwards mentioned. It then proceeded to convey and transfer all the property, &c., described in schedules C and D to said Cady and Hutchins, to hold upon the trust that they should sell and convert the same into money, use all diligence, and apply the proceeds of the sales, 1. to the payment of expenses; 2. the residue, in the first place to the payment of the claims of the creditors in schedule A, and to indemnify them; and then appropriate what remained to the payment of the claims of the persons named in schedule B; and the surplus, if any, to Atwood. It appointed the trustees the attornies of Atwood, and they covenanted, in general terms, that they would execute the trust, being answerable only for their several receipts and wilful defaults.

This indenture was executed by Atwood, Cady and Hutchins, the plaintiffs, and the defendant. The note in suit is mentioned in schedule A. The defendant is one of the creditors whose claims are described in schedule B.

The amount of the property assigned, as set down in the schedules, was $16·926·73, and the amount of the claims, as specified in schedule A, was $7·278·66. The defendant contended that this showed an appraisal of the property by the trustees and creditors, and was *prima facie* evidence of the amount of it, and a bar to the action.

He further contended, that he was discharged by an agreement to give day of payment to Atwood. Upon this point, it appeared, that the note was transferred to the plaintiffs on the day of its date, and the interest paid on it for the term of

six months.　The interest, for four months in advance, was paid on it October 5, 1833, and again February 1st, 1834, and had been so paid in advance, from time to time, by Atwood, to the 20th of August, 1837.　The regular rule of the bank at the time this note was taken, was to receive the interest on all notes, from time to time, for the term of four months in advance.　A vote was passed, three or four years since, requiring ten per cent. of the principal to be paid on all notes every four months, with the interest in advance.　No part of the principal of this note has been so paid.

The defendant was elected a director of the bank in July, 1833, and has been a director ever since that time.　His service, as a member of the standing committee, commenced November, 1833, since which he has acted regularly.　It did not appear that he in any way interfered with the affairs of the bank before November.　Since that time he has known the manner of managing the business in relation to interest, and has never made any objection.　He had a discount at the bank, January 2, 1838, on which the interest has been cast in advance, and paid by him without objection, although not actually paid in advance.

At the time this note was transferred to the bank, there was a by-law that all notes for money loaned by the corporation, should be payable to the corporation.

A verdict was taken for the defendant, by consent, subject to the opinion of this court on the foregoing case.

*S. D. Bell*, for the plaintiff, argued, 1. That the valuation of the property assigned, in the schedule annexed to the assignment, was not *prima facie* evidence of the actual value. It was merely an estimate by Atwood.　The goods assigned were to be sold, and such parts of the demands released as the proceeds of the sales should be sufficient to pay, after the payment of the expenses.

2.　That the by-law of the plaintiffs, requiring all notes for money loaned by the corporation to be payable to the corpo-

ration, could not affect the title of the plaintiffs to this note, and the money due on it. That by-law was designed merely to regulate the proceedings of the officers, and to prevent their taking notes payable to themselves. Besides, when the note was indorsed it was payable to the corporation.

3. That the neglect of the vote of the bank, requiring ten per cent. of their notes to be paid every four months, cannot discharge the principal or surety. This was for the guidance of its own officers, in regard to collections. Mere delay, in enforcing payment of the principal, never discharges a surety. 2 *N. H. Rep.* 451, *Townsend* vs. *Riddle;* 3 *N. H. Rep.* 231, *Davis* vs. *Huggins;* 5 *N. H. Rep.* 104, *Bank* vs. *Woodward.*

4. That a member and trustee of the bank could not be discharged from his liability as a surety upon a note to the bank, by a payment of interest in advance. It may fairly and reasonably be contended, that all banking institutions have adopted the practice of taking interest in advance, upon the understanding that they had a right to sue at any time, notwithstanding the payment. If this is not so, the regular rule of the bank, at the time this note was taken, was to receive the interest on all notes, from time to time, for the term of four months in advance. This brings the case distinctly within what is understood to be the rule of decision in *Crosby* vs. *Wyatt, Strafford, Dec. term,* 1839. The interest having been paid in pursuance of the rule, the assent of the surety is to be presumed.

5. That a trustee of a savings bank could not avail himself of the defence that he had been discharged by a payment of interest in advance, after having suffered the note to lie in the bank without objection, or any notice that he would not be bound.

6. That it was not to be assumed that any officer of the bank had the right, by the acceptance of interest in advance, to discharge a surety. If the treasurer, or any other officer, had such authority, it devolves on the defendant to show it.

It is an essential point of his defence, which he is to make out by proof. 6 *Peters* 51, *Bank* vs. *Dunn;* 8 *Peters* 12, *Bank* vs. *Jones; Story on Agency* 104; 17 *Mass. R.* 28, *Salem Bank* vs. *Gloucester Bank;* 6 *Johns. R.* 53, *Crary* vs. *Turner;* 1 *Roll's Ab.* 291, *M. pl.* 2, *pl.* 5; 1 *Roll's R.* 265, *Payne* vs. *Chute;* 9 *Cowen's R.* 194, *Wood* vs. *Jefferson Co. Bank.*

7. That a surety, assenting to a compromise of his principal, by executing the deed of assignment, could not avail himself of the principal's discharge, to exonerate himself. Time given, or a compromise, discharges a surety only when done without the assent of the surety. 2 *N. H. Rep.* 451; 3 *N. H. Rep.* 231; 5 *N. H. Rep.* 104; 6 *N. H. Rep.* 505, *Wheat* vs. *Kendall.* A compromise stands on the same ground as time given. 7 *N. H. Rep.* 195, *Pickering* vs. *Marsh;* 6 *Mass. R.* 88, *Sargeant* vs. *Appleton;* 16 *Johns. R.* 42, *Lynch* vs. *Reynolds.* That the surety executes the deed of assignment, is an assent to the acts of the principal in conformity with it. 17 *Johns. R.* 58, *Bruen* vs. *Marquand;* 17 *Johns.* 174, *Seymour* vs. *Minturn.*

*Bartlett & Eaton,* for the defendant. The bank has got property, in the hands of their agents, to more than the amount, to be applied to the payment of the debt, on a contract with the principal. Whatever property was thus received must be applied. The obligation is to apply it, and from this the creditors cannot release themselves.

The defendant signed the indenture on account of a debt of his own, in schedule B, and not with any reference to this debt.

The by-laws of the bank were introduced, to show that this note was not subject to their usages. They cannot raise any implication of knowledge by the defendant, the note not having been made payable there.

So as to the payment of the ten per cent. This note was not made to conform to that rule.

Payment of interest in advance is evidence of a contract to give time. Here is neither an express or implied reservation. *Crosby* vs. *Wyatt, Strafford, Dec. T.*, 1839. The defendant is not shown to have had knowledge of any such usage, when it took place.

One trustee of the bank has no more power than another. The defendant's doing nothing, therefore, after he became trustee, furnishes no evidence of assent.

PARKER, C. J. The sums set down in the schedule, against the different articles of property, do not furnish even *prima facie* evidence of its value. For aught which appears, they were mere estimates of its value, by Atwood, the debtor. The case furnishes nothing to show that there was an appraisal ; and if there had been, the contract is that the property should be sold, and the avails applied towards the discharge of the demands. This furnishes no discharge to the defendant.

But there is nothing in the case, to take it out of the principle, settled in *Crosby* vs. *Wyatt*, (10 *N. H. Rep.* 318.) The interest was received in advance, upon the note, October 5, 1833, from the principal debtor, and there is nothing to show, at this time, any knowledge, or assent, on the part of the surety. He was not then a trustee of the bank, nor is there any evidence that he then had any knowledge of its usages. There is no evidence that the note was made to be discounted at the bank, or that the defendant had any dealings with the corporation up to this time. We cannot, under these circumstances, presume any assent on his part. There is no proof to rebut this evidence of a contract to delay, or to show that any right was reserved. It is contended, that it is not to be presumed that any officer of the bank had a right to make a contract which would discharge a surety. But it appears from the case, that the treasurer of the bank was warranted in receiving the interest in advance, under the common usage. The cases cited, therefore, do not apply.

The treasurer had authority to do, and did, what furnishes *prima facie* evidence of a contract for delay. If he had attempted to make an express contract for delay, on any other terms, or for a different consideration, the argument that he had exceeded his authority, and that the bank was not bound, might perhaps have availed.

If the defendant, with a knowledge of the fact that the interest had been paid in advance on the 5th of October, 1833, had subsequently recognized the note as an existing debt against him, that might furnish evidence of his assent to the payment of interest in advance, and the contract for delay. But there is no evidence of this. It does appear that he had, subsequent to that time, a knowledge of the usage to take interest in advance, and acquiesced in it. There is no express evidence of his assent to the several payments of interest on this note, after he became a trustee, in November, 1833, nor any particular evidence to show that it came under his care and superintendence. His assent to those payments might be inferred from his knowledge of the usage, if he knew the note was in the bank, and no measures were taken for its collection. But this would not be a recognition of the debt, as one existing against himself. If, after he was in fact discharged, he had given an express assent to the reception of interest, and a contract for delay, this would not restore his liability, although it might not have been a prudent exercise of his official authority, to permit the note to lie in that manner. He may have neglected his duties as an officer of the bank, but we cannot, from any mere omission to proceed with the collection of the debt, find a recognition of it, as an existing debt against himself.

Nor can the defendant's signature to the indenture of assignment, as a party of the third part, avail, as evidence of an acknowledgment that he was under any liability on this note. There was a debt at the time due to him from Atwood, and the fair inference is, that his execution of the assignment had reference to his own debt. He was not at

that time a creditor of Atwood, by reason of having signed the note. If he executed the assignment on account of his liability on this demand, there should be something more direct than this case furnishes, to show that fact.

*Judgment on the verdict.*