## CROSS v. ROWE, CLEMENTS, AND YOUNG.

Statements of parties to a promissory note, made either before or at the time of making it, which tend in any way to change the terms of the note, cannot be received in evidence; but it is not exceptionable for the holder of the note to show its consideration, as tending to throw light upon the transactions of the parties, when the evidence does not enlarge, circumscribe, or in any manner vary the terms or character of the note.

A negotiable promissory note, made payable to a bank or order, but not discounted by them, may be indorsed to the holder of the note by a vote of the directors of the bank. And where such a note is made to raise money, the sureties upon it cannot object, that by so doing, the note has been turned from its legitimate purpose, so as to discharge them from their liability.

R. made a negotiable note, payable to a bank or order, which he agreed to let C. have to raise money upon, in payment for a horse which he bought of C. He obtained Y. and another person to sign with him as sureties, and C. took the note. C. afterwards presented the note to the bank for discount, but it was not discounted; and after it fell due, the sureties requested the bank not to discount it. The bank being subsequently furnished with security to save them harmless, indorsed the note over to C. who brought an action thereon. *Held*, that the action could be maintained, and that these facts did not constitute a defence for the sureties.

ASSUMPSIT. The writ contained two counts. The first was founded upon a promissory note, dated July 31st, 1848, signed by the defendants jointly and severally, for one hundred dollars, payable to the South Berwick Bank or order, in sixty days and grace, and by said bank indorsed and delivered to the plaintiff December 27th, 1848.

7 *

The second count was for two hundred dollars, money had and received.

Rowe was defaulted. Young died insolvent. Clements pleaded that he never promised, &c., on which issue was joined.

The note being produced in evidence, was signed by Rowe as principal, and by Young and Clements as sureties.

The defendant, Clements, introduced evidence tending to show that this note was presented at the South Berwick Bank for discount, within a day or two after its date, and that it was not discounted; that afterwards, and not long before the indorsement of the note by the bank, the sureties, Young and Clements, called at the bank and inquired if the note had been discounted, and requested that it should not be; and soon after called on the president of the bank, and made a like request, and he assured them that it should not be discounted.

The evidence showed, that when the note was so presented at the bank, the cashier informed the person who brought it, that the directors had voted not to make any discounts that week, and that it could not be discounted; that it was not then nor at any time laid before the directors for discount, and that it was never discounted.

The defendant's evidence further tended to show, that at the time when the note was indorsed by the bank, and before the indorsement, the agent and attorney of the plaintiff was present and knew that the note had never been discounted by the bank, and that Clements and Young had been at the bank but a short time before, and requested that the note should not be discounted; and that the bank had no interest in the note.

Upon being furnished with a bond to save the bank harmless, a vote of the directors was passed, ordering the cashier to indorse the note to the plaintiff.

The plaintiff introduced evidence tending to show that Rowe agreed with the plaintiff to purchase of him a horse, for one hundred dollars; that not having ready money to pay for him, he offered his note, which the plaintiff declined to accept, because he was in want of the money. Rowe then offered, that if the plaintiff would get a proper bank-note written, he would get

Young and Clements to sign it, and the plaintiff could get the money on it at the bank. The plaintiff acceded to this proposition, got such a note written, and delivered the horse and the note to Rowe, who a few days after returned and delivered to him the note, signed by himself and said Young and Clements; and the plaintiff expressed himself satisfied. It did not appear that either Clements or Young were present, or were informed of any of these facts, or that the plaintiff had or claimed any interest in the note until the commencement of this suit. To all the foregoing evidence, introduced by the plaintiff, the defendant excepted.

The plaintiff's evidence also tended to prove, that the note was sent to the bank by the plaintiff to be discounted; and it did not appear that it was at any time in the hands of any other person.

Upon this state of facts, the Court held, that if the jury believed the evidence, the plaintiff was entitled to a verdict. To this opinion, the counsel for Clements excepted.

A verdict was found for the plaintiff, which the defendant moved might be set aside, and a new trial granted, on account of said exceptions. And the questions, arising upon said motion, were reserved and assigned to this Court for their determination.

*Marston & Eastman,* for the defendant.

The defendant, Clements, moves the Court to set aside the verdict in this case, upon the following grounds:

I. Upon the whole case, as reported, the plaintiff could not maintain this action, even against Rowe, the principal maker of the note declared on, the note not being made or delivered to the plaintiff by Rowe, to be held by him as evidence of any debt due to him, but for a specific purpose, to raise money by a discount at the bank, to which it was payable. This purpose failing, the note became inoperative for any purpose.

II. Evidence of negotiations of the plaintiff with Rowe, the principal maker, before the note was made, or at any time relative to the note, (the defendant not being notified of, or assenting to, such negotiations) was improperly admitted to affect the

defendant Clements. When one becomes surety on a note to be used for a particular purpose, the principal cannot divert it from that particular purpose, without the consent of the surety. 5 U. S. Dig. 637, § 814, referring to 1 Hill, 589; 8 U. S. Dig. 311, referring to 16 Ohio Rep. 382; 8 U. S. Dig. 312.

III. Such evidence, as was admitted in this case, was improperly received as against any parties to this note, because of its *tendency* to change what is declared upon, and offered in evidence as the written contract. 1 Greenl. Ev. §§ 275, 276, *et passim.*

IV. The plaintiff has no title or interest in said note, except that derived from the bank on the 27th of December, 1848, with a full knowledge that the bank had never had any interest in, nor any possession of, this note up to the time of its indorsement. The note in the plaintiff's hands, is subject to any defence which could have been made to it in the hands of the bank, the original payee. *Odiorne* v. *Howard*, 10 N. H. Rep. 343.

In an action by indorsee against maker, evidence that the plaintiff knew that the note was invalid between the parties, may be derived from the fact that the note was overdue at the time of the indorsement. 1 N. H. Rep. 254. In this case there was positive evidence, bringing home the fact to the plaintiff, of the invalidity of this note, between the original parties.

V. An accommodation indorser, (same as surety in this case,) of a note to be discounted at a bank, may, before the note is discounted, recede from his agreement, and direct the bank not to receive the note; and such indorser will not be liable to a third person, who takes the note with notice. 8 U. S. Dig. 313.

VI. The bank had never any legal, equitable, or negotiable interest in this note, and were notified and requested, and agreed not to discount or receive this note, long after, by its terms, it would have been due, and before its indorsement, by which it clearly appears that no contract existed between the bank and the makers of this note. *Adams Bank* v. *Jones et al.* 16 Pick. 574.

*Jordan*, for the plaintiff.

I. The note upon which this suit is founded, was made for one particular purpose, to wit, to be the means of purchasing a horse for Rowe. It was made payable to the bank or order, to accommodate Cross in that particular way, with ready cash. Cross sold the horse to Rowe, receiving the note therefor, and thereby obtaining an interest in it; and thus the object for which the note was made was effected.

II. The evidence of negotiations of the plaintiff with Rowe, was properly admitted, because it was a part of the *res gestæ* and in no way tending to change the written contract.

The plaintiff had an interest in the note. The indorsement of the note by the bank, on the 27th of December, 1848, operated only to make a legal plaintiff to the suit.

It is not necessary that the Bank should have an interest in the note, if the plaintiff had.

We make these suggestions in reply to the positions of the defendants. We also take the following positions in behalf of the plaintiff.

I. The plaintiff had an interest in the note, to wit, the value of the horse.

II. If the bank had discounted the note, the defendants would · have been liable. The bank not having done it, any other person might, and the defendants would be liable. *Bank of Chenango* v. *Hyde et al.* 4 Cowen's Rep. 567; *Powell* v. *Waters*, 17 Johns. Rep. 176; *Elliott* v. *Abbott*, 12 N. H. Rep. 549.

III. The promise on the part of all the signers is to the bank or order. The plaintiff may be considered as having discounted the note at its origin. If not at that time, he may well be considered as having discounted it when the bank refused, by retaining it himself, and not returning it to the defendants. It in no way affects the liability of the sureties, whether he did this by cash or horse. *Elliott* v. *Abbott*, 12 N. H. Rep. 549; *Bank of Chenango* v. *Hyde et al.* 4 Cowen's Rep. 567.

EASTMAN, J. The note on which this suit was instituted, was made by Rowe, Young and Clements, the three defendants, and

received by the plaintiff, in payment for a horse, which he had sold to Rowe ; Rowe being the principal on the note, and Young and Clements sureties. Young having died insolvent, and Rowe being defaulted in the action, the defence is made by Clements alone.

On the trial, evidence was introduced subject to exceptions, showing the circumstances under which the note was given, and what was its consideration. It was not necessary that the consideration should be proved, as that is to be presumed, until it shall, in some way be attacked. Still, being shown, no suggestion is made that it was not good and valuable ; but on the contrary, it appears, that so far as the equity of the case is concerned, it is clearly with the plaintiff ; since he would not have parted with his property without receiving the note.

Nor is this evidence exceptionable. It neither enlarges, circumscribes, or in any way changes the terms or character of the contract. If it did, it could not be received. As it is, however, it simply tends to throw light upon the transaction, without affecting the legal rights or liabilities of the parties, or varying in any manner the existing contract between them. We see no objection therefore to its reception.

The plaintiff, then, seeks to recover a note founded on a good and valid consideration ; which was at all times his legal property, and which would probably have been given directly to him, were it not that it was necessary for him to have the money at once. Had the note been made payable to him, instead of the bank, no question could be raised in regard to the liability of the sureties. But inasmuch as it was not, and was not discounted, Clements claims that the sureties are not liable, under the circumstances of the case.

There are certain principles by which indorsers and sureties upon promissory notes are held to be discharged from their liability. Without going into a detail of them at this time, it is sufficient to observe, that they proceed upon the general principle, that any change of the original contract, which may be agreed upon, and carried into effect between the holder of the note and the principal or maker, ordinarily discharges the surety and indorser, if the agreement is entered into without the consent of

Cross v. Rowe.

the surety and indorser, and is in any way prejudicial to their interests. They are not bound by any new contract, prejudicial to them, to which they are not parties, and have not given their assent. Story on Bills, §§ 425, 26, and 27 ; *Philpot* v. *Bryant*, 4 Bing. 717 ; *McLemon* v. *Powell*, 12 Wheaton's Rep. 554 ; 3 Kent's Com.. 111 ; *Woodworth* v. *Bank of America*, 19 Johns. Rep. 391 ; *Grafton Bank* v. *Kent*, 4 N. H. Rep. 221 ; *Bank* v. *Woodman*, 5 N. H. Rep. 99 ; *Woodman* v. *Eastman*, 10 N. H. Rep. 359. If, therefore, there has been any change in the original undertaking of this defendant, which is in any way prejudicial to his interests, and to which he has not given his assent, he must be discharged.

The note is payable to the South Berwick Bank or order. The contract of the signers is, that they will, in sixty days, pay one hundred dollars to said bank, or to any one who may become the indorsee of the bank. This contract was made on the 31st day of July, 1848, and consequently the note fell due about the 1st of October following. From the date of the note, up to the commencement of the suit, the note was either at the bank, or in the hands of the plaintiff, or under his control ; and it is not to be presumed, that the principal and sureties were ignorant of its situation. Yet, so far as appears, no attempt was made, either by the principal or the sureties, to pay the note. It was perfectly competent for the sureties to have paid it, and then had their recourse over upon the principal for indemnity. But this was not done ; and on the 27th of December, 1848, the bank indorsed the note to the plaintiff, he having given security to save them harmless in the premises. The plaintiff thus became the legal holder and indorsee of the note, and being the party who had furnished a valuable consideration therefor at its inception, he was the equitable holder also.

The defence, as we understand it, is, that the note was diverted from its proper and legitimate purpose ; that it was never discounted by the bank, and that the sureties, not long before it was indorsed to the plaintiff, requested the bank not to discount it. But this defence, we apprehend, is more specious than sound. The purpose of making the note, was to raise money to

pay the plaintiff for the horse; and it was made payable to the bank, with a view of effecting that object more readily. That it did not answer its end, in raising the money, is very true; but it was certainly in no way prejudicial to the interests of the sureties that it did not. Their liabilities upon it would not have been in any degree lessened, if it had. At least, the facts presented in this case do not show that they would. Even if the sureties were not informed that the note was made to raise money to pay *for the* horse, still they knew that it was made to raise money, and they signed the note with a full knowledge that it was to pass from their hands. It was a negotiable note, and whether the bank advanced the money upon it, or an individual, or whether it was taken as payment for money, and held till it matured, it could not vary their liability upon it. It has not followed perhaps the precise channel that was anticipated, but it has not been turned from a strictly legal channel. Its design has not been perverted to the injury of any one of the signers, nor has it been put to any purpose that can properly be regarded as a change from its original intent. If the sureties could at any time have invalidated the note, by interdicting its discount — which is doctrine that we are not prepared to affirm — it surely should have been done at an earlier day than nearly three months after it fell due. Their action, after such a lapse of time, looks very much like an after consideration, when the circumstances and responsibility of the parties had perhaps changed.

The view which we have taken of this defence is strongly sustained by a decision of the Court in New York, in the case of the *Bank of Chenango* v. *Hyde et al.* 4 Cowen's Rep. 567. In that case, Hyde, Johnson, and Whitney, the defendants, made a note to be discounted at the Bank of Chenango, and payable to the bank. Hyde took the note to the bank, but they would not discount it. Hyde then applied to one Birdsall, who advanced the money, and the note was lodged with the bank as agent of Birdsall for his security. In a suit in the name of the bank, for the benefit of Birdsall, it was decided that, as the note was made to raise money, it did not change the liability of any of the parties to it, that the money was advanced by Birdsall instead of the bank.

The discussion by Chief Justice Parker, in *Elliott* v. *Abbott*, 12 N. H. Rep. 549, also sustains the plaintiff in this action, although the precise questions, in this case, were not raised in that. By the authority of that decision, however, as well as by that of the *Bank* v. *Hyde et al.*, this action might have been brought in the name of the bank, for the plaintiff's benefit: He might also have declared upon the note, as payable to himself by the name of the bank. And the question is distinctly settled that the bank could indorse the note, as was done in this case, and then the plaintiff sustain his action.

The opinion of the Court, therefore, is, that there should be

*Judgment on the verdict.*