# CHESHIRE,

## JULY TERM, A. D. 1842.

### ELLIOT vs. ABBOT.

If a note be made payable to a bank, for the purpose of being discounted there, but is discounted by an individual, with the assent of all the makers; the party receiving it may declare upon it as a note made payable to the bank, giving the bank an indemnity against costs; or he may declare upon it as made payable to himself, by the name of the bank. And it *seems* that he may also, at his election, declare on it in his own name, as a note payable to the bearer, regarding the name of the payee as fictitious. If he can obtain a valid indorsement of it, by the bank, he may maintain an action as indorsee.

The cashier of a bank, for the purpose of collection, may indorse notes belonging to the bank, and those lodged there for collection, or as collateral security.

But where a note, made payable to a bank, is discounted and taken by a third person, the cashier cannot make a valid indorsement of the note, without authority from the directors, or from the corporation. And the separate assent of a majority of the directors, (without any meeting,) that he should make an indorsement, confers no authority upon the cashier for that purpose.

Where the plaintiff brought an action, declaring upon a negotiable note made payable to a third party, and indorsed to him;—*Held*, that he might have leave to amend, by filing a count declaring upon the same note as payable to himself.

ASSUMPSIT, upon a promissory note, dated September 30th, 1839, payable to the President, Directors and Co. of the Ashuelot Bank, or order, in sixty days and grace, and alleged to be indorsed by the cashier of the bank to the plaintiff.

The note in question was signed by John Townsend as principal, and by the defendant as surety, and had upon it the indorsement of the cashier of the bank.

It appeared in evidence that, prior to the making of the note, Townsend was indebted to the defendant, who called on him for payment. Townsend told the defendant that if he would sign a note to the bank with him, he would get him some money; and the note in question was thereupon

executed. Townsend presented it to the bank for discount. The cashier told him the bank was not then discounting, but referred him to the plaintiff, as a person who had money on deposit in the bank, and who would probably take the note. The plaintiff's agent, on application to him, concluded to take the note, gave a check on the bank for the money, and told Townsend it would be left in the bank for collection.

Townsend paid part of the money so received, to the defendant, on the debt due him, and informed him that he could not get the money at the bank, but had passed the note to the plaintiff, to which the defendant made no objection.

The note was left in the bank for collection, but afterwards, on some objection being made, it was returned to the plaintiff.

After the note became due, Townsend having absconded, the plaintiff's agent wrote to the defendant, requesting payment. The defendant called, said he was going to Boston, and should see Townsend; that he did not wish to have any thing done about it, and when he came back he would attend to it.

In March, or April, 1840, the defendant saw Townsend in Boston, and requested him to furnish money to take up the Elliot note, saying that he should have to take it up; and on the 19th day of March, 1840, which was the day of the service of the writ, the defendant requested the plaintiff's agent to say to him, that he had seen or heard from Townsend, and the note would be paid soon.

After the note became due, the plaintiff applied to the cashier of the bank to indorse it, who at first refused, but said he would see the directors about it. He afterwards applied to four of the directors separately, and they assented that the indorsement should be made, which was accordingly done, without recourse. The board consisted of seven. There was no meeting of the directors, nor any vote upon the subject, nor any record made of an authority to indorse. The cashier testified that he indorsed no paper to transfer

Elliot *v.* Abbot.

the property of the bank, without an authority of record; but that he was in the daily habit of indorsing paper for collection, without any vote, or record, that being one of his duties as cashier; and that he consulted the directors, before making this indorsement, in the same manner that he did in discounting notes.

The defendant objected, that the evidence was insufficient to show any authority in the cashier to indorse the note, or to enable the plaintiff to sustain the action.

A verdict was taken for the plaintiff, by consent, judgment to be rendered thereon, or the verdict to be set aside and judgment rendered for the defendant, according to the opinion of this court upon the foregoing case.

*Edwards*, for the defendant.    There has been no indorsement of this note from the bank to Elliot.

If the note had been the property of the bank, this indorsement would not have transferred the property to the plaintiff, because the cashier had no authority to indorse it.

The authority of a general agent is to transact the business of his principal. 17 *Mass. R.* 29, *Salem Bank* vs. *Gloucester Bank;* 14 *Mass.* 62, *Wyman* vs. *Hallowell & Augusta Bank; Ditto* 180, *Hallowell & Augusta Bank* vs. *Hamlin;* 11 *Mass.* 94, *Spear & a.* vs. *Ladd;* 4 *Cowen's R.* 567, *Bank of Chenango* vs. *Hyde.*

It is not pretended that there was any general authority in the cashier to indorse notes situated like this. Whatever authority the cashier had was derived from different conversations with the directors, at different times. It should be given at a meeting of the directors appearing of record.

The charter states that there shall be seven directors. Four constitute a board for the transaction of business. If there is any usage that a less number may transact the ordinary business of the bank, that will not authorize this transfer, which was out of the ordinary course. There has been no subsequent act of the directors, to confirm the indorsement.

But the case finds that this never was the property of the bank ; and the directors could not give the cashier authority to negotiate paper which never belonged to the bank. It may be questioned whether the corporation itself could do so.

*Handerson,* (with whom was *Chamberlain,*) for the plaintiff. It is laid down, in *Bailey on Bills* 117, *note,* and *Wild* vs. *The Bank of Passamaquoddy,* 3 *Mason* 505, is referred to, that a cashier of an incorporated bank has *prima facie* authority to indorse, on behalf of the bank, negotiable securities held by it. The cases cited by the defendant, 14 *Mass.* 180, *and* 17 *Mass.* 97, go only to say, that a cashier cannot transfer the funds of the bank, without authority from the directors. But those cases admit that he may do what is necessary to collect notes left for collection, by indorsing them ; and this, no doubt, he may do, whether the note is left merely for collection, or as a collateral security for a debt due the bank ; and this without any special authority from the directors. The usage extends thus far, at least. It should be observed that nothing was done here, of which the directors or stockholders complain. If it be held that a majority of directors, acting separately, could not confer any authority to indorse the note, the facts at least show their assent.

It is to be observed that the bank had no interest in this note. The indorsement of the cashier was without recourse. If it be conceded that a cashier cannot, by virtue of his general power and authority, transfer the funds of the bank, that is not this case. The note was nominally payable to the bank, but was discounted by the plaintiff; and to give him authority to collect it, in his own name, it must be transferred to him by the nominal payee. This, and only this, was done. All the authorities show that a cashier may indorse a note for collection. It is done every day. To enable Elliot to collect the note, and, if necessary, sue it in his own name, the cashier indorses it. This we think a cashier may do by

virtue of his general authority, without a vote of the directors. It is just what any nominal payee may do, who has no interest to transfer by the indorsement.

It cannot be said that Abbot only authorized Townsend to pledge his name to the Ashuelot Bank, and did not agree to become indebted to Elliot. It is quite too late to make this objection. Abbot was informed, when he received the money of Townsend, of whom the money was obtained, and all the circumstances in regard to it. He knew who held his note, and he received the money with this knowledge, and made no objection; and he afterwards recognized the note as one he was bound to pay, and promised to pay it. In all this he ratified the doings of Townsend.

PARKER, C. J. The note in this case was drawn payable to the Ashuelot Bank, and there offered for discount. On being refused at the bank, because the bank was not discounting, the cashier referred Townsend, the principal, to the plaintiff, who discounted it, giving an order upon his deposit in the bank. Under such circumstances the plaintiff, with the assent of the bank, might well have maintained an action in the name of the bank, to recover the note for his own use. 4 *Cowen* 567, *Bank of Chenango* vs. *Hyde.* And in that case Mr. Justice Sutherland, in delivering the opinion of the court, says: " The question is not whether the bank has a general authority to act in the capacity of a trustee, but whether the *bona fide* holder of a promissory note, in which the bank is nominally the payee, has a right to sue in the name of the bank. I apprehend, if the bank had refused the use of its name, a court of equity would have compelled it to allow such use, on proper terms."

The doctrine thus suggested seems to be very reasonable; and we are of opinion that in this case the plaintiff might have brought his action in the name of the bank, giving the bank an unexceptionable indemnity against costs; and that the bank could not, under such circumstances, have objected

to the prosecution of the action. Nor could Townsend, or the defendant, have made any objection to the maintenance of an action in the same manner as if the bank, instead of the plaintiff, had furnished the money.

The plaintiff in our opinion might, also, on the facts in this case, have maintained an action on the note in his own name, declaring on it as made payable to himself, by the name of the President, Directors & Co. of the Ashuelot Bank. Townsend, who had procured the plaintiff to discount it, and delivered it to the plaintiff, as the promise of himself and the defendant, could not surely be admitted to say that it was not a promise to the plaintiff; and the defendant, who received from Townsend, by way of payment, a part of the money received from the plaintiff, with knowledge how it was obtained, without making any objection, and who afterwards in several instances recognized the plaintiff's right to it, in such a manner that it would be competent for a jury to find a promise, on his part, to pay, if that fact would avail the plaintiff, must be held by all these acts to have ratified the act of Townsend in passing the note to the plaintiff, as a promise and obligation to him.

If both the defendants concurred in delivering the note to the plaintiff, as their promise to him, it is immaterial by what name the promise is made to him. He is, in such case, the person to whom the promise is made. And if one so delivers it, and the other afterwards ratifies the act, the result is the same.

It would seem that the plaintiff might also maintain an action on the note in his own name, declaring on it as a promise to pay the bearer, upon the ground that the name of the payee might, if he so elected, be regarded as fictitious. 2 *N. H. Rep.* 446, *Foster* vs. *Shattuck*. It would certainly seem to be as available to the plaintiff, as if the name of the payee had been left blank. 2 *Mau. & Sel.* 90, *Cruchley* vs. *Clarance.*

And it is not clear that the plaintiff might not, on the

Elliot *v.* Abbot.

facts before us, maintain an action on a count for money had and received. The defendant had in fact part of the amount of the note, in money received of the plaintiff. It is true that he received this, not directly from the plaintiff, but as a payment of so much money on a debt due from Townsend to him. But as the note was made partly to raise money, in order that Townsend might pay such money to the defendant, and as he received part of the identical money furnished by the plaintiff, knowing how it was procured, and afterwards recognized the plaintiff's claim ; it would not be a very forced construction, so far as the plaintiff is concerned, and for the sake of the remedy, to hold that the money was received to the use of the defendant, as well as of Townsend, although, as between themselves, the defendant was but a surety.

The form of the plaintiff's action, however, will not permit us to place the case on any of these grounds. It is not brought in the name of the bank ; and as he declares only upon a note made to the bank, and indorsed to him, the case, if it can be sustained in its present shape, must be so upon that ground only.

Although the bank never had any interest in this note, we see no objection to regarding it as having been made to them, and indorsed to the plaintiff, if the indorsement can be upheld upon the evidence. The promise is in terms to the bank. The signers did promise to pay the bank ; and as they made the promise negotiable, the bank might well transfer it. And it makes no difference to the defendant, whether the bank discounted the note, and then sold and indorsed it to the plaintiff ; or whether the plaintiff, having funds in the bank, furnished the money in the first instance, the bank indorsing the note to him, and the defendant assenting to the transfer. Without the acts showing the defendant's assent to the discount of the note by the plaintiff, the case of the *Bank of Chenango* vs. *Hyde* is an authority, as far as it

goes, to sustain the plaintiff's right to recover, if the bank has indorsed.

We come, then, to the question, has this note been indorsed to the plaintiff, by the bank? Is that allegation in the plaintiff's declaration sustained? The defendant may deny this.

There seems to be no sufficient evidence on which to sustain an indorsement through the acts of the directors. A majority of them assented, it is said; but this was at no regularly notified meeting, nor in fact at a meeting of those who did assent, although that would not have been sufficient to have given it the character of an act of the board. There should have been either the act of all, (and it is not settled whether that would be sufficient, unless they met together,) or there should have been a stated, or regularly notified, meeting, at which all might have been present, in which case the act of a majority of a quorum might have been good. *Despatch Line of Packets* vs. *Bellamy Man. Co. & Trustees, Ante* 205, 224.

If the indorsement is sustained, therefore, it must be on the ground that the cashier had, under the circumstances, authority to make the indorsement.

It is contended that the cashier has, *prima facie*, authority to indorse securities held by the bank; and that if he has not authority to transfer the property of the corporation, by the indorsement of a note or bill, without a vote of the directors, he may do what is necessary to collect notes due the bank, or left for collection, or lodged as collateral security. The authority cited for the plaintiff, 3 *Mason* 505, seems to hold that the cashier has, *prima facie*, authority to indorse negotiable securities held by the bank, and thereby transfer the property; and in *Hartford Bank* vs. *Barry*, 17 *Mass.* 97, cited for the defendant, although it is said that "a cashier cannot transfer the property of the corporation in a note, without authority from them, or perhaps from the directors, pursuant to powers vested in them by the corpora-

Elliot *v.* Abbot.

tion," yet it is said further that "he may do what is requisite for the recovery of a note." The usage testified to by the cashier, in this case, is in accordance with the principles stated in the latter case. The cashier here states that in no case has he indorsed to transfer the property of the bank, without a special authority. His is not a general power of indorsement, if such may, *prima facie*, exist.

But this case does not come within the principle, or the usage. This was not a note belonging to the bank, or held as collateral security, and indorsed to enable the plaintiff to collect it for the benefit of the bank. Nor was it a note indorsed to the bank, and left for collection, and where an indorsement over was necessary, or convenient, in order to facilitate the collection for the benefit of the owner.

The ground upon which the cashier may indorse the name of the bank, and transfer the legal interest, in any case, is not because the indorsement is merely nominal, transferring no actual property. If it were so, this indorsement might be supported as the indorsement of the bank. But it is, that the cashier is the agent of the bank for that purpose :—that by virtue of his appointment as cashier, the bank authorizes him to make indorsements in such cases.

Tested by this principle, the indorsement in this case must fail. It is not the act of the bank, because not made by an agent having power to make an indorsement in such case. The directors are the general agents of the bank. The cashier is a special agent, and a matter of this kind is not within the scope of his authority. It can make no difference that the bank had no interest in this matter, or that the bank and the directors have not dissented. There has been no confirmation of the act of the cashier, by the bank, or the directors, and there is no evidence of an assent to this indorsement, by the defendant.

The plaintiff's allegation that the note was indorsed by the bank, therefore, fails ; and this is a material allegation as the case now stands.

But it is apparent, from the views we have taken of the case, that the merits are with the plaintiff. The objection to his recovery arises not from the want of a cause of action against the defendant, upon the note declared on, but from the failure of the proof to support the particular form in which the declaration is framed.

Instead, therefore, of rendering judgment for the defendant, as we should do on this case if the merits were with him, the plaintiff, after the verdict is set aside, may, if he desire it, have leave to amend upon terms, and the action may then stand for trial.

*Verdict set aside, and leave to amend.*