## HUNT *v.* ALDRICH & *a.*

Where a negotiable promissory note is made to raise money, it does not change the liability of the parties to the note, that the money is advanced by a third person instead of the payee.

The holder of such a note may declare upon the same as made payable to himself, by the name of the payee.

It seems, also, that he may declare upon it as payable to bearer, regarding the name of the payee as fictitious.

ASSUMPSIT, founded upon a promissory note of the following tenor and date:—

" Keene, Dec. 25, 1851.

Ninety days from date, we promise to pay the Cheshire Bank, or order, at their banking house, one hundred and fifty dollars, value received.

AMASA THOMPSON,
AMASA ALDRICH."

In the first count in the writ, the plaintiff declared on the note as payable to himself, by the name of the Cheshire Bank. In the second count, he declared on it as payable to bearer. Thompson was defaulted. A verdict was taken by consent for the amount of the note, against Aldrich, subject to the opinion of the superior court on the following facts:

Thompson wishing to raise some money, made an arrangement with Aldrich to sign this note, as surety with him, intending to apply at the Cheshire Bank for a discount of the same. Aldrich accordingly signed the note with a knowledge of the purposes for which it was intended, taking security of Thompson for his liability thereon. Thompson applied to the bank for the money on the note, but the bank declined to discount it, and thereupon he applied to the plaintiff for the money on it, and he lent him the amount thereon.

Aldrich, some time after the note become due, had knowl-

edge that it was in the plaintiff's possession, but it did not appear that he ever assented to the transfer of the note by Thompson to the plaintiff, or that he ever acknowledged or recognized any legal liability of his to the plaintiff thereon. Nor did it appear that Aldrich had ever received anything on the security taken by him, or whether the same was of any value.

The note was never held by the bank, and it had nothing to do with, or any knowledge of, the transfer of it by Thompson to the plaintiff.

The case was transferred to this court, with an order that judgment be rendered on the verdict or the same be set aside and a new trial granted, according to the opinion of the court upon the foregoing facts.

*Chamberlain*, for the defendant.

This case is clearly distinguishable from *Elliott* v. *Abbott*, 12 N. H. Rep. 549. In that case Abbott, the surety, received a part of the proceeds of the note from Townsend, the principal; and it finds the assent of Abbott to the transaction, and a promise by him to Elliot to pay the note. The note was in fact made to enable Townsend to raise money to pay a debt from him to Abbott, which was done. The point decided in that case, however, is merely that the plaintiff could not recover because the note was not legally indorsed to him by the bank. That point being settled, the other suggestions made by the court, not being upon that point, can hardly be considered as judicial decisions.

The case of *Cross* v. *Rowe*, 2 Foster's Rep. 77, is also distinguishable from this. In that case the note was duly indorsed, and the action was brought by the plaintiff as indorsee. The case also shows that the plaintiff had an interest in the note at its inception, it being given for a debt due from the principal to the indorsee.

In this case the plaintiff is a mere volunteer. He had no interest or negotiation with the bank, or with Aldrich, the

surety. There was no privity between Hunt and the payee or surety. The bank having refused to discount the note, the defendant, Aldrich, might well consider his liability on the note as terminated.

This action cannot be sustained except upon the broad ground that where a person puts his name to a note as surety he is liable, at all events, to any person who chooses to purchase it, without the knowledge or consent of the surety, although the note, as between the parties to it, never had any legal existence, the payee having refused to accept it. The surety in this case might be willing to sign a note payable at a given time, and generally paid at maturity, when he might refuse to be held responsible for an indefinite period, to a stranger, into whose hands it might fall, for the term of six years.

The circumstance of the defendant's having taken security from Thompson, makes no difference in regard to his liability to Hunt, and the security, if it were of any value, may have been given up on finding that the note was not discounted. The security does not appear to have been of any value.

The case of *Foster* v. *Shattuck*, 2 N. H. Rep. 446, is one where the plaintiff was the owner of the note from its inception. It was given for money lent by the plaintiff in the action, and intended for that purpose when it was made. The point decided in that case, however, as in *Elliott* v. *Abbott*, is, that the plaintiff could not recover as indorsee.

In the case of *Bank of Chenango* v. *Hyde*, 4 Cowen's Rep. 567, the action was brought by the original payee of the note, and it was left with the bank, so that the sureties might see that it was a valid note, and they could not be misled as to their liability on paying the bank, where it was intended to be paid.

The note in question was payable at the Cheshire Bank, to the bank. The bank never had the ownership or possession of the note.

There is no equity in favor of the plaintiff in this case. Aldrich was a mere surety, and that was known to Hunt. Aldrich had an undoubted.right to choose his creditor, and Hunt was certainly under no necessity, by his voluntary and gratuitous interference, to change the liability of Aldrich without his assent.

*Wheeler & Faulkner*, for the plaintiff.

1. The case finds that Aldrich signed the note with knowledge that it was intended for the purpose of raising money, and the liability of Aldrich was not changed by the fact that the money was advanced by the plaintiff instead of the bank. The note was negotiable, and although it may not have followed the channel anticipated, it has not been perverted to the injury of the defendant or changed from its original intent. *Cross* v. *Rowe*, 2 Foster's Rep. 84 ; *Bank of Chenango* v. *Hyde*, 4 Cowen's Rep. 567.

This is a case stronger than that of *Cross* v. *Rowe*, inasmuch as the defendant took security for signing, which he still retains. The only other distinction which can be drawn between the two cases is, that in *Cross* v. *Rowe*, the note was indorsed by the bank, although it had no legal or equitable interest in it.

2. The action is properly brought in the name of Hunt, and either count in the declaration is sufficient. *Elliott* v. *Abbott*, 12 N. H. Rep. 549 ; *Cross* v. *Rowe*, cited above.

EASTMAN, J. The defence to this action is made by Aldrich, the surety on the note, Thompson having been defaulted.

The note was made to raise money. It was a negotiable, accommodation note. The contract was to pay the Cheshire Bank, or their order, one hundred and fifty dollars, at their banking house, in ninety days. And had the defendant fulfilled his contract and gone to the bank at the expiration of the ninety days with the money, he would undoubtedly have

found the note there, and could have taken it up. But if not there, he could have left the money and he would have been discharged from any further liability.

The defendant was aware of the purposes for which the note was made. He signed it to accommodate Thompson; and inasmuch as the place and time of payment were fixed, it could make no difference whatever to him, whether the bank advanced the money, or any one else. All he.had to do, was to perform his contract and pay the money at the time and place that he agreed to, and he would be discharged.

But the questions presented in this case must be regarded as settled in this State.

In *Cross* v. *Rowe,* 2 Foster's Rep. 77, it was held that a negotiable note, made payable to a bank, or order, but not discounted by them, might be indorsed to the holder of the note by a vote of the directors of the bank; and that where such note is made to raise money, the sureties upon it cannot object that, by so doing, the note has been turned from its legitimate purpose so as to discharge them from their liability.

The note in that case was made payable to the bank, or order, but was not discounted by them, nor was it indorsed to the plaintiff till two or three months after it fell due.

In *Elliott* v. *Abbott*, 12 N. H. Rep. 549, where the note was given payable to a bank, and the money advanced by the plaintiff, it was held, that the note might be declared on as a note made payable to the bank, giving to the bank an indemnity for costs; or that the holder might declare upon it as made payable to himself by the name of the bank. It was further said in that case that it seems that the holder may, also, at his election, declare on the note in his own name, as a note payable to bearer, regarding the name of the payee as fictitious. It was also held that if the holder could obtain a valid indorsement by the bank, he might maintain an action as indorsee.

Hunt *v.* Aldrich.

Now although the case at bar is not, as suggested by the defendant's counsel, identical in its facts with the two cases cited, yet in principle it is the same. The doctrine which governed those cases, as also the case of *Chenango Bank* v. *Hyde & a.*, 4 Cowen's Rep. 567, cannot, we think, be distinguished from this case, so as to relieve the defendant from his liability. The principle is this, that when a note is made to raise money, it does not change the liability of the parties to the note that the money is advanced by a third person instead of the payee; and the holder may declare upon the note as made payable to himself by the name of the payee, if not as payable to bearer.

We have taken no notice of the fact that Aldrich took security when he signed the note. Were it necessary, that might perhaps become an important consideration. 1 Story's Eq. 481; 11 Vesey's Rep. 22.

*Judgment on the verdict.*