## ROCKINGHAM BANK *v.* CLAGGETT.

If a motion for a nonsuit is not made at the trial, this court will not consider whether the plaintiff should have been nonsuited or not.

So, also, if there is no motion made in the court below to set the verdict aside as against evidence, that question will not be considered here.

A promissory note once paid, ceases to be negotiable.

Payment of a joint and several note by one of the signers, is ordinarily a discharge of the debt.

If a joint and several promissory note be taken up by one of the sureties, not with the intention to pay and discharge it, but to purchase it, such payment will not be a discharge of the debt, and an action may be maintained upon it for the benefit of the real plaintiff in the name of the payee.

ASSUMPSIT, upon a promissory note, dated December 5, 1843, signed by the defendant and J. Norton and Thomas Norton, by which the signers jointly and severally promised to pay the Rockingham Bank $100, in thirty days, and grace. The writ was dated November 30, 1849.

The plaintiff in interest was alleged to be James Smith, who was permitted by the common pleas to prosecute the suit, at the September term, 1853, the term at which the trial was had.

The defence under the general issue was payment, and that the suit was brought in the name of the plaintiffs without their authority.

Upon the trial it appeared that Claggett was the principal on the note, and that the two Nortons signed it as his sureties.

Thomas Norton testified that the note was due in thirty days, that it was not paid by Claggett, that he, the witness, was notified by the cashier, and held himself bound, that he delayed paying it till the cashier would wait no longer, and he then put his note into the bank for ninety days, and took the old note. His own note was due on the 19th of March, but he could not say that he paid it then or after. He did not pay it with money received of James

Pickering, and he could not tell whether it was paid before or after Pickering gave him the money. The old note was taken up by him in person. There was no agreement as to any assignment of the note. It was merely paid. He could not tell how long he paid it before he delivered it to James Pickering. It laid in his hands till the date of the assignment to Pickering, July 20, 1846. He received no money of Pickering till that date. He thought his own note was not renewed, but he could not recollect whether he took up his own note with the money received of James Pickering, or before. *

James Pickering was called as a witness by the plaintiff. On being examined as to his interest, by the defendant, he said, " I do not recollect that I ever advised a suit against Claggett in the name of the bank. Smith did so in my presence. Norton assigned the note to me. Smith furnished me the money to pay the note. I had money of his in my hands, but not one thousand dollars. The note came into my possession. I cannot tell how long it remained, nor why the assignment was made to me. I have no interest now nor ever had in this suit. I was at Emery's when the suit was ordered. I had no interest in it. Never had."

The witness was then sworn in chief, and testified that James Smith furnished him the money to pay the note, and he furnished the money to Thomas Norton. He received the note from Norton when he paid the money, and received an assignment of the security Norton had of Claggett. The note was in his possession about the time of the assignment of the contract. He knew nothing of the payment of the money to the bank by Norton. He left the assignment made to him with Emery or Smith, and has never assigned it. The property assigned to Norton, and by him to the witness, was a judgment in favor of Claggett against James Smith.

On cross-examination he said, " I think I did not go into Mr. Emery's office accidentally. I gave no direction as to

the suit. I might have gone with Smith to have the suit brought. I do not recollect how it was. Emery made a writ. I had nothing to do with it. Nothing was said to me about fees, to Emery. Mr. Emery knew the whole."

The defendant then objected to the testimony of this witness, and contended that it showed a liability of the witness to pay Emery his fees. But the objection was overruled by the court, and the defendant excepted.

The assignment by Claggett to the Nortons being produced, was dated February 15th, 1845. It assigned a judgment recovered by Claggett against James Smith, and recited that the Nortons had paid or secured to be paid to the bank a note on which they were sureties, and appointed them attorneys to collect the judgment. It was conditioned to be void if Claggett paid the debt.

The Nortons, by an indorsement, assigned this document to James Pickering, as before stated, July 20, 1846.

James Pickering testified that Claggett told him he expected money to pay the note, and he would pay it. He never pretended that he had paid it.

Winthrop Pickering testified, that he had a talk with Claggett as to this suit. Claggett said the debt was honest, and he meant to pay it; but Emery had not brought his action right. He often spoke of the demand; said it was honest, and he meant to pay it.

The president and cashier of the Rockingham Bank, called by the defendant, testified that the bank had no claim against William Claggett, and had authorised no suit.

Thomas Norton being recalled, said, " I cannot recollect the sum Pickering paid; think $115 is more than he paid; not over $100, not enough to pay my note. I sold Pickering what Claggett called a judgment. I gave him up the old note. I let him have the judgment and this note."

In the charge the jury were told that a payment of money is equivocal, since, when made by any one but the person primarily indebted, it may be made either to discharge the

claim on which it is paid, or it may be made not to cancel or discharge the debt, but to acquire a right to the claim or security; as if the holder of a second mortgage pays the amount of an earlier incumbrance, and nothing appears which shows the design of the payment, it may be held to operate to vest in the second mortgagee, the first mortgage, as an existing security, if the justice of the case requires it; and this may be so even where there has been a formal discharge executed. In the absence of any direct evidence as to the purpose of a payment, the jury may judge from the situation, circumstances and actions of the parties, as to their intention. And in this case, as weighing on this question, the jury might consider the declarations of Claggett as to the justice of the plaintiff's claim. If they should be of the opinion that a fair inference from all the circumstances would be that the payment was made by Norton, not to discharge the note, but to purchase it, the real plaintiff might make use of the nominal plaintiff's name to recover the claim, being bound to indemnify the latter against the costs of the suit, if required. If, however, the reasonable inference from the evidence was that the payment was made by Norton in discharge of the debt, the note was paid and satisfied, and the action could not be maintained.

The jury returned a verdict for the plaintiff, which the defendant moved might be set aside and a new trial granted for supposed error in the rulings and instructions of the court. Either party were permitted to refer to the assignment and papers used upon the trial; and the questions arising upon the case were transferred to this court for determination.

*Claggett, Christie,* and *Wells,* for the defendant.

The evidence shows an absolute, unqualified and unconditional payment of the note to the bank by one of the parties to it, and that there was no transfer or assignment by the bank, either equitable or legal, to the party paying it.

The defendant relies upon the payment as a perfect defence. A note once paid ceases to be negotiable. Chitty on Bills, 108; *Blake* v. *Sewell*, 3 Mass. Rep. 557.

Upon the evidence of the plaintiff the court ought to have ordered a nonsuit. But if not, the verdict should be set aside as against evidence.

The bank gave no authority to commence or prosecute the suit, but on the contrary, disavowed it; and Smith had no interest in it. Pickering was the party interested, and he was erroneously permitted to testify in his own case. The court erred in ruling him competent.

The court should have charged the jury that the assignment was a payment, and that the bank repudiating the suit, it could not be maintained. The assignment was a new contract between Claggett and the Nortons. The note was merged in this new contract; and if the Nortons got their pay out of the security given them, there is an end of the matter. They must go upon the covenants, and cannot recover on the note. And further, as this assignment authorized the Nortons to assign, they have assigned to Pickering, and Pickering paid them the amount of the note.

*Emery*, for the plaintiff.

The note in suit has never been paid, and the suit can be maintained in the name of the bank, for the benefit of the assignee and real holder. I think the decisions in our own courts settle the matter, and I will detain the court only to refer them to a couple of cases. *Phelps* v. *Mahurin*, 6 N. H. Rep. 535; *Low* v. *Blodgett*, 1 Foster's Rep. 121.

EASTMAN, J. There was no motion for a nonsuit made at the trial, nor does the case find any motion to set aside the verdict as against evidence. There was no transfer of these questions, and they are not therefore before us.

We see no reason to revise the decision in regard to the interest of Pickering. He distinctly disavowed all interest

in the suit, and the papers used upon the trial do not show any.

The principal question of the case relates to the payment of the note, and the maintaining of the action in the name of the bank. And this question, we think, was settled by the jury, under the instructions of the court. The court, in substance, instructed the jury that if the payment made by Norton was in discharge of the debt, the note was paid; otherwise, if the payment was made by him not in discharge of the note, but to purchase it. Under these instructions, the jury must have found that the note was not paid, and the whole matter would thus seem to have been passed upon and determined by them.

The assignment by Claggett to the Nortons could not operate as a payment. It commenced by reciting that whereas the Nortons have paid or secured to be paid the note to the bank, and it was expressly conditioned to be void if Claggett should pay the debt. It was collateral security merely; not payment. If it had been otherwise, or intended as payment, the note would undoubtedly have been given up to Claggett. But the instrument shows for itself that it was not payment, and that the note was not merged in it, as contended.

The assignment to Pickering by the Nortons was only what the instrument itself provided for. It was made to the Nortons, their executors, administrators and assigns; and Pickering, by the assignment to him, took the position and interest of the Nortons. Claggett could have paid the debt at any time to Pickering or Smith, for whom Pickering acted, as well as to the Nortons, and the assignment would thereby have become void. The debt was not discharged by the transfer to Pickering, any more than by the assignment to the Nortons.

The instructions of the court to the jury were clearly right; and the jury having found that the note was not paid, but purchased by Norton, the action can be maintained in

the name of the bank, giving them an indemnity against costs. This question has been so fully and recently examined and passed upon by this court, that we do not deem it necessary to discuss it more fully at this time. *Edgerly* v. *Emerson*, 3 Foster's Rep. 555; *Cross* v. *Rowe*, 2 Foster's Rep. 77; *Low* v. *Blodgett*, 1 Foster's Rep. 121; *Elliott* v. *Abbott*, 12 N. H. Rep. 549.

There is no doubt of the correctness of the defendant's position, that a note once paid ceases to be negotiable. Such is the doctrine of the cases above cited, and such was the effect of the instructions given to the jury upon the trial of this case.

No exception was taken to the evidence as incompetent to show that the note was not paid. In the case of *Blake* v. *Sewell*, 3 Mass. Rep. 556, cited by the defendant, the payment was made by Pomroy, who was the real debtor in the case. The note was given by Wilson, on a consideration received by Wilson and Pomroy, and Wilson afterwards paid to Pomroy his half of the note, so that Pomroy became the sole debtor. A careful examination of the case will show that it is not an authority for the defendant in this suit.

We are all of opinion that there must be,

*Judgment on the verdict.*